UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DR. WILLIAM S. ROSS and CYNTHIA ROSS                                    PLAINTIFFS

V.                                    CIVIL ACTION NO.1:07CV521 LTS-RHW

METROPOLITAN PROPERTY and CASUALTY
INSURANCE COMPANY, ET AL.                                    DEFENDANTS

## MEMORANDUM OPINION and ORDER

The Court has before it the defendants' motions [115] [121] *in limine* to exclude evidence of the actual cost the plaintiffs incurred in replacing their insured property (real and personal) damaged or destroyed in Hurricane Katrina.  For the reasons set out below, these motions will be granted, subject to a qualification concerning the replacement of items of personal property.

The plaintiffs' Economy Premier Assurance Company's (EPAC) homeowners policy number 1823417700 has coverage limits of $540,100 (dwelling) and $378,070 (personal property).  The policy provides for "Inflation Protection," an adjustment to policy limits based upon a "construction price index," a term not defined in the policy.  The plaintiffs purchased "Replacement Cost" coverage for their dwelling and "Replacement Cost on Contents" coverage for their personal property.

The replacement cost coverage has the potential to allow a recovery greater than the actual cash value of the insured property at the time of loss (as defined in the policy, actual cash value is replacement cost less depreciation).  This replacement cost coverage does not increase the liability limits stated in the policy declarations, but it does  eliminate any deduction for "physical deterioration and depreciation including obsolescence*"* in the event the insured elects to replace the insured property.  By eliminating this deduction, the actual replacement cost for the insured dwelling and for the insured personal property becomes the measure of the plaintiffs' contract damages, up to the limits of coverage set out in the policy declarations.

The insured property (both the dwelling and its contents) was severely damaged in Hurricane Katrina.  The storm caused both a covered windstorm loss and a flood loss that was not covered by the EPAC homeowners policy.  The question of the extent of the loss caused by these two forces (wind versus water) and the question how to properly ascertain the replacement cost value of the insured property (both the dwelling and its contents) lie at the heart of this dispute.  This motion concerns only the latter question, i.e. the replacement cost valuation of the insured property.

This valuation question arises because the replacement dwelling the plaintiffs built is not a duplication or replication of the insured dwelling, nor is it constructed from materials of like kind and quality.  The replacement dwelling is a different design with many features that are dissimilar to the insured dwelling, and the question is whether the cost the plaintiffs actually incurred for building this replacement dwelling is relevant to establish the amount of replacement cost coverage provided by the EPAC policy.

This valuation question is separate from the wind versus water causation question.  As to causation, the plaintiff bears the ultimate burden of proving their right of recovery under the insurance contract, and the defendants bear the burden of proof as to the flood damage exclusion they are relying upon.  I will assume, <u>for purposes of this discussion only</u>, that the plaintiffs will meet their burden of proof and establish to the satisfaction of the jury that the destruction of their dwelling was caused mainly by storm winds.

This valuation question cannot be considered in isolation from other relevant facts, including the effect of the plaintiffs' having collected flood insurance benefits and benefits for wind damage under the EPAC policy.  Fortunately, the plaintiffs insured against flood damage through a Standard Flood Insurance Policy (SFIP) issued by Audubon Insurance Company (Audubon) under the National Flood Insurance Program.  Plaintiffs collected their flood insurance limits: $250,000 for damage to their building and $100,000 for damage to the contents of their building.  Defendants have paid wind damage benefits of $104,952.31 under the plaintiffs' homeowners policy, but the plaintiffs contend that the wind damage to their property far exceeds the payment the defendants have made.  Both the flood insurance benefits the plaintiffs have collected and the wind damage payments the defendants have made must be taken into consideration to ascertain the remaining benefits the plaintiffs may collect under their EPAC policy.  The relationship between these other insurance recoveries and the remaining valuation question necessarily complicates the issue presented in this motion.

While I will, for the sake of simplicity, omit the defendants' wind damage payments from my discussion of the issues presented by this motion, the defendants will certainly be allowed a credit for these payments against their policy limits or against replacement cost if that proves to be less than policy limits.  I will also omit the policy's inflation protection provision from this discussion.  I will discuss the valuation question as it applies to the plaintiffs' dwelling, but these same principles will govern the plaintiffs' claim for damage to their personal property.

Plaintiffs built a new home on the lot where the insured dwelling was located. The defendants admit that the plaintiffs are entitled to replacement cost coverage, but the parties sharply differ on how the amount of replacement cost coverage should be calculated and whether the rebuilding cost the plaintiffs actually incurred is relevant to that calculation.

Based on my reading of the EPAC policy, and in light of the defendants' having admitted that replacement cost coverage has been triggered, I conclude that the cost the plaintiffs have actually incurred in building their new home is not relevant to the amount of replacement cost coverage available under this policy.  The amount of replacement cost coverage is the replication cost of the insured property, i.e. the cost the plaintiffs would have incurred if the insured dwelling had been duplicated or replicated using materials of like kind and quality.

My analysis begins with the terms of the EPAC homeowners policy, which provides, in relevant part:

> ***GENERAL DEFINITIONS***
> \*   \*   \*
> ***"Actual cash value"*** *means the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence.*
> \*   \*   \*
> ***SECTION 1 - ADDITIONAL COVERAGES***
> \*   \*   \*
> 17.   **Inflation Protection.**  *The limits of liability specified in the Declarations of this policy, or any amendments thereto, for Coverages A, B and C and Loss of Use are continuously adjusted in accordance with the applicable construction price index in use by* ***us***. *This index will then be multiplied by the limit of liability for Coverage A, B and C and Loss of Use separately.*
> \*   \*   \*
>
> ***PROPERTY LOSS SETTLEMENT***
> ***SECTION 1 -HOW WE SETTLE A PROPERTY LOSS***
> 1.   ***Coverage A - Dwelling and Coverage B - Private Structures***
>      *Covered property losses are settled as follows:*
>      A.   **Actual Cash Value Settlement.**  *Subject to the applicable deductible,* ***we*** *will pay the* ***actual cash value*** *at the time of the loss for the damaged property, but no more than the lesser of:*
>           (i)   *the amount required to repair or replace the damaged property with property of like kind and quality; or*
>           (ii)  *the limit of liability applying to the property.*
>           \*   \*   \*
>      2.   *If* ***you*** *repair or replace the damaged or destroyed property,* ***you*** *may make further claim for any additional payments for* ***Replacement Cost Settlement*** *provided:*
>           a.   ***you*** *have not reached the applicable limit of liability;*
>           b.   ***you*** *still have an insurable interest in the property;*
>           c.   ***you*** *notify us within 180 days after the date of* ***actual cash value*** *payment of your decision to repair or*

> > *replace the damaged or destroyed dwelling or private structure;*
> d. *you notify us within 30 days after the repair or replacement has been completed; and*
> e. *the date of completion is within one year from the date of **actual cash value** payment.*
>
> *The foregoing time limitations shall apply unless **you** or **your** representative submits written proof providing clear and reasonable justification for the failure to comply with such time limitation.*
>
> B. ***Replacement Cost Settlement.*** *If at the time of loss the amount of insurance applicable is determined to be 80% or more of the full current replacement cost, **we** will pay the full cost of repair or replacement, subject to the applicable deductible, without deduction for depreciation subject to the following:*
> > 1. ***we*** *will not be liable unless and until actual repair or replacement is complete; and*
> > 2. ***our*** *liability will not exceed the smallest of:*
> > > a. *the limit of liability applicable to the building;*
> > > b. *the cost to repair or replace the damaged part(s) of the building with materials of like kind and quality on the same premises for the same occupancy and use; or*
> > > c. *the amount actually and necessarily spent to repair or replace the damaged part(s) of the building with materials of like kind and quality on the same premises for the same occupancy and use.*
> > > > \*   \*   \*

2. ***Coverage C - Personal Property***
   *Covered property losses are settled as follows:*
   > A. ***Actual Cash Value Settlement.*** *Subject to the applicable deductible, **we** will pay the **actual cash value** at the time of the loss for the damaged property, but no more than the lesser of:*
   > > 1. *the amount required to repair or replace the damaged property with property of like kind and quality; or*
   > > 2. *the limit of liability applying to the property.*
   > B. ***Replacement Cost on Contents***
   > ***This provision applies when replacement Cost on Contents is shown in the Declarations.***
   > *If **you** repair or replace the damaged or destroyed property, **we** will pay the full cost of repair or replacement less the applicable deductible, without deduction for depreciation.*
   > > 1. *This settlement applies to:*
   > > > \*   \*   \*

> c. personal property covered under **COVERAGE C - PERSONAL PROPERTY** *other than* [certain specified exceptions];
>
> \*     \*     \*
>
> 2. ***Our*** *liability for any loss shall not exceed the smallest of the following amounts for any one loss:*
>    a. *the cost to replace the property with a similar property of like kind and quality;*
>    b. *the full cost of repair to restore the property to its original condition;*
>    c. *the limit of liability for Coverage C shown in the Declarations subject to* [other policy limitations on specified types of property] . . .
>
> 3. *If **you** decide not to repair, restore or replace the damaged or stolen property, settlement will be on an **actual cash value** basis.  **You** may make any claim within 180 days after the date of **actual cash value** payment for any additional payment on a replacement cost basis if **you** repair, restore or replace the damaged or stolen property.*

The plaintiffs have constructed a new building on the same premises and for the same use as the insured dwelling.  Defendants recognize that this triggers the replacement cost coverage provisions of the EPAC policy.  Rather than duplicating the insured building, plaintiffs elected to build a different type or style of dwelling, a home with very different features from the insured dwelling.  Defendants do not contest the plaintiffs' right to replacement cost coverage, but the defendants contend that the cost the plaintiffs have incurred in building their new dwelling should not be admissible as the measure of the plaintiffs' contract damages, i.e. replacement cost coverage, under their homeowners policy.

I agree with the defendants on this point.  The policy does not require the defendants to pay replacement cost for a dissimilar building that is not of like kind and quality as the insured building.  But, once the insured dwelling is replaced, even with a very different building, the policy does require the defendants to pay the cost of replicating the insured building using materials of like kind and quality, without a deduction for depreciation from this replication cost.  By the policy terms set out above, replacement cost coverage for the insured building cannot exceed the policy limits set out in the declarations ($540,100) and it cannot exceed the replication cost.  The plaintiffs will be entitled to recover the smaller of these two figures (after credit for defendants' prior payment).

The insurance contract does not establish any obligation on the part of the plaintiffs to rebuild or replace their insured dwelling.  Had the plaintiffs elected to move to a new residence, they would be entitled to the actual cash value of the insured dwelling, as defined in the policy, up to the policy limit stated in the declarations ($540,100) (assuming the plaintiffs could prove that the damage or destruction of the dwelling was attributable to a covered cause, i.e. windstorm).  The election whether to replace the insured dwelling was entirely within the discretion of the plaintiffs.

Nor were the plaintiffs obliged, under their insurance contract with EPAC, to replicate the insured dwelling.  Replacement does not imply that the insured dwelling must be replicated.  I believe a reasonable reading of the insurance contract would allow the plaintiffs to claim replacement cost coverage whether they built a far more expensive home (one that cost more than the policy limit or $540,100 and more than the cost of replication) or a less expensive one.  The insurance contract provides only that the insured dwelling may be replaced, and the proper measure of damages under the contract in this situation is replication cost, i.e. the actual cost the plaintiffs would have incurred to duplicate or replicate the insured building using materials of like kind and quality as those in the insured building, up to the coverage limit ($540,100).

If I understand the position of the parties reflected in the pre-trial order, the plaintiffs will spend $623,420 in replacing their insured dwelling.  Neither the plaintiffs nor the defendants indicate what the replication cost for the insured dwelling would have been.  If the replication cost would have exceeded the policy limit ($540,100), the parties could considerably simplify the trial by making that stipulation or by making a stipulation of the replication cost if it were less than $540,100.  It is the smaller of these two figures (replication cost or policy limits) that represent the potential contract damages in this action before credit for the payments the defendants have already made.

For purposes of giving proper credit for the flood insurance collections, it will be necessary to establish the actual cash value of the insured property at the time of loss.  The actual cash value of the dwelling at the time of loss is relevant to the credit I must allow for the $250,000 flood insurance recovery for damage to the insured dwelling.  Depending on what the actual cash value is determined (or stipulated) to be, it will be the necessary starting place in ascertaining the plaintiffs' original loss, and, under the indemnity principle, the ceiling on the plaintiffs' recovery from all sources of insurance.  The actual cash value of the insured property at the time of loss is the figure against which the flood insurance recovery must be credited.  This figure may be more or less than the EPAC policy limit for dwelling coverage.  The plaintiffs' dwelling was insured for $790,100 ($540,100 under the EPAC policy and $250,000 under the Audubon SFIP).  The limits of coverage available under the EPAC policy for damage to the plaintiffs' dwelling will not be affected by the plaintiffs' flood insurance recovery if the actual cash value of the dwelling at the time of loss was equal to or greater than this total insured value ($790,100).

The parties may also wish to stipulate the actual cash value of the insured dwelling at the time of loss if they can reach an acceptable figure by negotiation. If, by negotiation, the parties could arrive at a stipulation of both the actual cash value of the insured property (dwelling and contents) and the duplication cost, this trial would be considerably shortened, but any or all of these figures may be the subject of wide and yet reasonable disagreement so that arriving at such a stipulation may prove impossible.

Whatever the jury determines these two figures (actual cash value and duplication cost) to be, by special interrogatory if necessary, the Court will make the appropriate deduction for the flood insurance recovery, for the inflation protection feature of this policy, and for partial payments already made by EPAC. I will expect the parties to reach a stipulation of the "applicable construction price index" in use at the time of trial.

Accordingly, the defendants' motions [115] [121] *in limine* to exclude evidence of the actual cost the plaintiffs incurred in replacing their insured property (real and personal) damaged or destroyed in Hurricane Katrina is **GRANTED** with the exception that plaintiffs may offer evidence of actual replacement cost they have incurred for any items of personal property that have been replaced with similar items of like kind and quality, provided these items of personal property were disclosed to the defendants before the pre-trial conference.

**SO ORDERED** this 24th day of October, 2008.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE