UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DR. WILLIAM S. ROSS and CYNTHIA ROSS                                PLAINTIFFS

V.                                                 CIVIL ACTION NO.1:07CV521 LTS-RHW

METROPOLITAN PROPERTY and CASUALTY
INSURANCE COMPANY, ET AL.                                            DEFENDANTS

## MEMORANDUM OPINION and ORDER

The Court has before it the defendants' motion [78] for partial summary judgment. The motion includes four distinct issues. For the reasons set out below, this motion will be granted in part and denied in part.

**Plaintiffs' Claim Against Metropolitan Property and Casualty Insurance Company**

The defendants' motion first questions the propriety of the plaintiffs' having named Metropolitan Property and Casualty Insurance Company (Metropolitan) as a defendant. The plaintiffs' homeowners policy was issued by the other named defendant, Economy Premier Assurance Company (EPAC). Plaintiffs assert that Metropolitan has been properly named as a defendant for three reasons: 1) the adjustor who inspected the insured property after Hurricane Katrina (James Feather) was a Metropolitan employee; 2) a Metropolitan employee (James Nickel) responded to or assisted in responding to the plaintiffs' interrogatories; and 3) the EPAC policy is composed, at least in part, of documents that state, "MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI."

Based on these three facts, plaintiffs assert that Metropolitan has failed to maintain its separate corporate identity, justifying the Court in disregarding that separate corporate identity in this suit. I disagree. The plaintiffs' insurance contract is with EPAC, and there is nothing in this policy that indicates or in any way suggests that Metropolitan is one of the contracting parties.

The Complaint alleges that Metropolitan "issued an [EPAC] policy of insurance to Plaintiffs." (Complaint Paragraph 7). The Complaint also alleges that the actions taken in response to their claim under the EPAC policy were those of "Met Life and Economy." While I am satisfied that the adjusting services and the assistance in the preparation of discovery responses rendered by Metropolitan employees make these employees the agents of EPAC, these actions are not sufficient to justify the Court's disregarding Metropolitan's separate corporate identity, nor are they sufficient to

support a finding that Metropolitan is liable to the plaintiffs for damages under the EPAC policy.

Accordingly, I will grant the motion requesting dismissal of the plaintiffs' claims against Metropolitan.  EPAC will be liable as the principal for the acts of any Metropolitan employees engaged in the handling of the plaintiffs' claims under the EPAC policy.  Cf: *Noblin v. USAA Cas. Ins. Co.*, Civil Action No: 1:06cv374 LTS-RHW, Docket Entry 78.

### Plaintiffs' Claims for Extracontractual Damages and Punitive Damages

Defendants also seek partial summary judgment dismissing the plaintiffs' claims for punitive damage and for extracontractual damages.  My review of the record indicates that there are many issues of fact surrounding the adjustment of the plaintiffs' claims.  The decision whether these facts will support a claim for extracontractual damages or for punitive damages must be decided on a more complete record than the one now before me.  This part of the defendants' motion will be denied.

### The Issue of Demolition Coverage

Defendants contend that no damages are owed under the EPAC policy for the demolition of the insured dwelling.  Defendants assert that a post-storm inspection indicated that the dwelling was 67.17% damaged by the storm.  Defendants therefore contend that "33% of the home was undamaged."  Defendants also contend that there is no possible liability under the EPAC policy because the insured dwelling was demolished to comply with an elevation requirement (16 feet) for rebuilding in Moss Point.  Defendants assert that the EPAC's policy provision excluding damage resulting from the enforcement of a law or ordinance precludes any recovery in these circumstances.

The EPAC policy provides, in relevant part:

### *SECTION I - LOSSES WE DO NOT COVER*

1. ***We*** *do not insure under any Section I coverage for any loss which would not have happened in the absence of one or more of the following excluded events. **We** do not insure for any such loss regardless of:*
   *(a)   the cause of the excluded event;*
   *(b)   other causes of the loss; or*
   *(c)   whether such causes acted at the same time or in any other sequence with the excluded event to product or contribute to the loss.*
   *These exclusions apply whether or not the excluded event results in widespread damage or affects a substantial area.  The excluded events are listed below.*
                     \*      \*      \*

> F. ***Ordinance or Law***, *meaning enforcement of any ordinance or law regulating the construction, repair, demolition or zoning of buildings, unless specifically provided under this policy.*

Plaintiffs assert that the storm damage was so severe as to compromise the structural integrity of the portion of the building that was still standing after the storm. Plaintiffs contend that the demolition of the part of the building left standing was part of the damage the windstorm caused and that the city ordinance concerning elevation was not the reason the dwelling was demolished.

Under Coverage A of the EPAC policy, the insurer is liable for any "sudden and accidental direct physical loss or damage to the [insured dwelling]" unless the cause of the damage was an excluded peril. If a covered peril (i.e. windstorm and not storm surge flooding) caused sufficient damage to the insured dwelling to require, as a practical matter, that the part of the dwelling left standing be demolished, the dwelling would be a total loss, and the EPAC policy would require compensation for all of the damage caused by the windstorm, including the demolition of the part of the dwelling left standing. Provided the damage was from a covered cause, i.e. windstorm, removal of the remainder of the building is covered under the policy's additional coverage for debris removal:

## SECTION L - ADDITIONAL COVERAGES

The deductible will not apply to Section I - Additional Coverages, except where specified in the Additional Coverage.

* * *

> 2. **Debris Removal**
>    A. **We** will pay reasonable expenses **you** incur to remove:
>       1. debris of covered property resulting from a cause of loss **we** cover for the damaged property . . .

In my view, the particular policy provision affording coverage for debris removal is a type of coverage that is "specifically provided under this policy" and is therefore within the stated exception in the "Ordinance or Law" exclusion. This portion of the defendants' motion will be denied.

### Hurricane Ivan Damage and Claim Adjustment

The Complaint in this action includes allegations concerning the adjustment of plaintiffs' claim for damage caused by Hurricane Ivan in September 2004. The contract claim for this damage has apparently been settled without litigation, but the plaintiffs contend that the actions of the adjustors who handled their claim for damage caused by Ivan acted in bad faith by delaying payment unreasonably. Plaintiffs apparently intend

to offer evidence of the adjustment practices followed in their earlier claim (the Ivan claim) in support of their current claim (the Katrina claim) for bad faith.

I have discussed this issue on an earlier occasion (Order, Docket Entry 102). To the extent that the damage done in Ivan may overlap with the damage done in Katrina, I will permit either party to introduce evidence relevant to show exactly what damage was done during Katrina. The Ivan claim has been resolved, and it is the Katrina claim that is now under consideration. Any evidence, including evidence of the damage done by Ivan, that illuminates this Katrina damage is relevant and admissible.

The harder question is whether the actions of the defendant's representatives in handling the plaintiffs' Ivan claim should be admissible in support of the plaintiffs' claim for bad faith in handling their Katrina claim. I have attempted to balance the quality of this evidence, i.e. its probative value, against the risks that the evidence will lead to confusion of the issues, that it would be unfairly prejudicial, or that it might mislead the jury. Rule 403 of the Federal Rules of Evidence requires that I take all of these factors into consideration and exclude this potentially relevant evidence only if these risks substantially outweigh its probative value.

There is a substantial risk that allowing the introduction of evidence concerning the adjustment of the plaintiffs' Ivan claim will lead to confusion of the issues. The jury may be required, during the second phase of this bifurcated trial, to consider all the steps taken in the adjustment of the plaintiffs' Katrina claim. This fact-intensive inquiry will be made much more difficult if the jury must also consider all the steps taken in the adjustment of the plaintiffs' Ivan claim.

The defendant was still evaluating the plaintiffs' claim for Ivan damage when Katrina made landfall. There is an element of potential unfair prejudice in allowing the plaintiffs to use this interrupted claims process to support their bad faith claim concerning the adjustment of their Katrina claim. These two claims were not handled in similar circumstances, and the comparison of the two has in it an element of potential unfairness to the defendant.

The probative value of this evidence is limited, in my view. The severity of the damage and the considerations in adjusting the Ivan claim were very different from those that were in play in adjusting the plaintiffs' Katrina claim.

Considering the relatively low probative value of this evidence, considering the substantial risk of unfair prejudice in the use of this evidence, and considering the substantial risk that this evidence will confuse the issues and mislead the jury, I will exercise my discretion under Rule 403 of the Federal Rules of Evidence and exclude this evidence from the trial.

Accordingly, it is

**ORDERED**

That the defendants' motion [78] for summary judgment is **GRANTED IN PART** and **DENIED IN PART**;

The motion is **GRANTED** as to the plaintiffs' claims against Metropolitan Property and Casualty Insurance Company, and a separate judgment of dismissal will be entered as to Metropolitan Property and Casualty Insurance Company; and

The motion is **DENIED** as to the plaintiffs' claims for extracontractual damages and punitive damages;

The motion is **DENIED** as to the plaintiffs' claim for demolition of the part of the insured dwelling left standing after the storm; and

The motion is **GRANTED** as to evidence that the plaintiffs' claim for damage during Hurricane Ivan was not handled in good faith and with reasonable care.

**SO ORDERED** this 28th day of October, 2008.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE